RECEIVED

MAR 22 2023

TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT, LOUISIANA
BY_____

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

SHREVEPORT DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| | * | |
| VS. | * | 5:23-cr-00067-01 |
| | * | Judge Hicks |
| | * | Magistrate Judge Hornsby |
| SHAQUAILA LEWIS, a/k/a | * | |
| SHAQUAILA LEWIS-CHATMAN | * | |

**INDICTMENT**

THE GRAND JURY CHARGES:

**COUNTS 1-4**
**Wire Fraud**
**[18 U.S.C. § 1343]**

**AT ALL TIMES HEREIN RELEVANT**

**The Defendant and Relevant Entities**

1.      The defendant, **Shaquaila Lewis, a/k/a Shaquaila Lewis-Chatman,** was a resident of Bienville Parish, Louisiana and employed as a registered nurse.

2.      Perfect Memories Travel, LLC ("Perfect Memories Travel") was a Louisiana limited liability company registered in or around August 2020.

3.      Person 1 was a resident of Claiborne Parish, Louisiana.

4.      Square Capital, LLC ("Square Capital") was a limited liability company headquartered in California.

5.      Kabbage, Inc. ("Kabbage") was a corporation headquartered in Georgia.

6.      Gibsland Bank & Trust was an independent community bank headquartered in Bienville Parish, Louisiana, and it maintained branch locations in the State of Louisiana.

## Small Business Administration

7.      The United States Small Business Administration ("SBA") was an executive-branch agency of the United States government that provided support to entrepreneurs and small businesses.  The mission of the SBA was to maintain and strengthen the nation's economy by enabling the establishment and viability of small businesses and by assisting in the economic recovery of communities after disasters.

8.      As part of this effort, the SBA facilitated government-backed loans through banks, credit unions, and other lenders.

## The Paycheck Protection Program

9.      The Coronavirus Aid, Relief, and Economic Security ("CARES") Act was a federal law enacted in or around March 2020 and designed to provide emergency financial assistance to the millions of Americans who were suffering the economic effects caused by the COVID-19 pandemic.  One source of relief provided by the CARES Act was the authorization of up to $349 billion in forgivable loans to small businesses for job retention and certain other expenses, through a program referred to as the Paycheck Protection Program ("PPP").  In or around April 2020, Congress authorized over $300 billion in additional PPP funding.

10.      In order to obtain a PPP loan, a qualifying business was required to submit a PPP loan application, signed by an authorized representative of the

business.  The PPP loan application required the business (through its authorized representative) to acknowledge the program rules and make certain affirmative certifications in order to be eligible to obtain the PPP loan.  In the PPP loan application, the small business (through its authorized representative) was required to state its average monthly payroll expenses and its number of employees, among other things.  These figures were used to calculate the amount of money the small business was eligible to receive under the PPP.  In addition, businesses applying for a PPP loan were required to provide documentation showing their payroll expenses.

11.    A PPP loan application was processed by a participating financial institution ("lender").  If a PPP loan application was approved, the participating lender would fund the loan using its own monies, which were guaranteed by the SBA. Data from the application, including information about the borrower, the total amount of the loan, and the listed number of employees, was transmitted by the lender to the SBA in the course of processing the loan.

12.    PPP loan proceeds were required to be used by the business on certain permissible expenses, including payroll costs, mortgage interest, rent, and utilities. Under the applicable PPP rules and guidance, the interest and principal on the PPP loan was eligible for forgiveness if the business was eligible for the PPP loan it received, spent the loan proceeds on these permissible expense items within a designated period of time, and used a certain portion of the loan proceeds for payroll expenses.

13.    Square Capital and Kabbage participated in the SBA's PPP as lenders and, as such, were authorized to lend funds to eligible borrowers under the terms of the PPP.

**The Economic Injury Disaster Loan Program**

14.    The Economic Injury Disaster Loan ("EIDL") Program was an SBA program that provided low-interest financing to small businesses, renters, and homeowners in regions affected by declared disasters.

15.    The CARES Act authorized the SBA to provide EIDLs up to $2 million to eligible small businesses experiencing substantial financial disruption due to the COVID-19 pandemic.  In addition, the CARES Act authorized the SBA to issue advances of up to $10,000 to small businesses within three days of applying for an EIDL.  The amount of the advance was determined by the number of employees the applicant certified having.  The advances did not have to be repaid.

16.    In order to obtain an EIDL and advance, a qualifying business was required to submit an application to the SBA and provide information about its operations, such as: (1) the number of employees, (2) gross revenues for the 12-month period preceding the disaster, and (3) cost of goods sold in the 12-month period preceding the disaster. The 12-month period for EIDLs for COVID-19 relief was from January 31, 2019, to January 31, 2020.  The applicant was also required to certify that all the information in the application was true and correct to the best of the applicant's knowledge.

17.   EIDL applications were submitted directly to the SBA and processed by the agency with support from a government contractor.  The amount of the loan, if the application was approved, was determined based on the information provided by the applicant about employment, revenue, and cost of goods, as described above.  Any funds issued under an EIDL or advance were issued directly by the SBA.  EIDL funds could be used for payroll expenses, sick leave, production costs, and business obligations, such as debts, rent, and mortgage payments.  If the applicant also obtained a loan under the PPP, the EIDL funds could not be used for the same purpose as the PPP funds.

## The Scheme to Defraud

18.   **Lewis** devised a scheme and artifice to defraud the SBA and various financial institutions, including Square Capital and Kabbage, by:

(1) falsifying PPP and EIDL Program loan applications, forms, and other documents ("fraudulent loan applications");

(2) submitting and causing to be submitted fraudulent loan applications to Square Capital, Kabbage, and the SBA in order to obtain funds through the PPP and EIDL Program; and

(3) receiving and obtaining payments and benefits from Square Capital, Kabbage, and the SBA based on the fraudulent loan applications submitted.

## Purpose of the Scheme

19.   The purpose of the scheme and artifice was for the defendant to unjustly enrich herself and others through the submission of the fraudulent loan applications.

## Manner and Means of the Scheme

20.     The manner and means by which **Lewis** sought to accomplish the objects and purpose of the scheme and artifice included, among others:

### *Perfect Memories Travel PPP Application*

21.     On or about May 31, 2020, **Lewis** electronically submitted and caused to be submitted a false and fraudulent PPP application to Square Capital in the name of Perfect Memories Travel seeking approximately $20,583 in PPP funds ("Perfect Memories Travel PPP application"). **Lewis** signed the Perfect Memories Travel PPP application and certified that the application and all information provided was true and accurate. Among other things, **Lewis** certified that the funds would be used "to retain workers and maintain payroll," as well as for making other permissible expenses.

22.     Perfect Memories Travel was not registered with the Louisiana Secretary of State until on or about August 21, 2020.

23.     In support of the Perfect Memories Travel PPP application, **Lewis** submitted a fictitious IRS Schedule C.

24.     Based on **Lewis's** material misrepresentations set forth in the fraudulent Perfect Memories Travel PPP application and supporting documents, on or about June 2, 2020, Square Capital disbursed approximately $20,583 in loan benefits to account no. x7440, held by **Lewis** at Gibsland Bank & Trust.

### *Perfect Memories Travel Second Draw PPP Application*

25.     On or about February 14, 2021, **Lewis** electronically submitted and caused to be submitted a false and fraudulent second draw PPP application in the name of Perfect Memories Travel to Square Capital, seeking approximately $20,833 in PPP funds ("Perfect Memories Travel Second Draw PPP application"). **Lewis** signed the Perfect Memories Travel Second Draw PPP application and certified that the application and all information provided was true and accurate. Among other things, **Lewis** certified that the funds would be used "to retain workers and maintain payroll," as well as for making other permissible expenses. **Lewis** further certified that she had used the full loan amount from the original Perfect Memories Travel PPP Application "only for eligible expenses."

26.     Based on **Lewis's** material misrepresentations set forth in the fraudulent Perfect Memories Travel Second Draw PPP application and supporting documents, on or about February 24, 2021, Square Capital disbursed approximately $20,583 in loan benefits to account no. x7440, held by **Lewis** at Gibsland Bank & Trust.

### *Perfect Memories Travel EIDL Program Application*

27.     On or about August 18, 2020, **Lewis** electronically submitted and caused to be submitted to the SBA a false and fraudulent EIDL Program application in the name of Perfect Memories Travel ("Perfect Memories Travel EIDL Program application"). **Lewis** signed the Perfect Memories Travel EIDL Program application and certified that the application and all information provided was true and accurate.

28.     In the Perfect Memories Travel EIDL Program application, **Lewis** falsely represented that the business had three employees and that its annual gross revenues were approximately $148,650.

29.     Perfect Memories Travel was not registered with the Louisiana Secretary of State until on or about August 21, 2020.

30.     Based on **Lewis's** material misrepresentations set forth in the fraudulent Perfect Memories Travel EIDL Program application, on or about September 30, 2020, the SBA disbursed approximately $36,800 in loan benefits to account no. x7440, held by **Lewis** at Gibsland Bank & Trust.

### *Person 1 PPP Application*

31.     On or about June 24, 2020, **Lewis** electronically submitted and caused to be submitted a false and fraudulent PPP application to Kabbage in the name of Person 1 seeking approximately $205,468 in PPP funds ("Person 1 PPP application").

32.     Prior to submitting the Person 1 PPP application, **Lewis** requested that Person 1 send Person 1's social security number, address, phone number, bank account information, and other personal identifying information to **Lewis**.

33.     The application falsely claimed that the business had five employees and an average monthly payroll of $82,188.

34.     In support of the Person 1 PPP application, **Lewis** submitted a fictitious IRS W-3 for 2019.

35.     Based on **Lewis's** material misrepresentations set forth in the fraudulent Person 1 PPP application and supporting documents, on or about June 29,

2020, Kabbage disbursed approximately $205,468 in loan benefits to an account held by Person 1.

## Scope of Scheme

36.     In addition to the applications described above, beginning in or around June 2020, and continuing through in or around May 2021, **Lewis** submitted and caused the submission of at least thirteen additional fraudulent PPP and EIDL Program applications on behalf of other individuals and purported businesses.  These additional applications were similar to those described above, such as containing false supporting tax documents, and all of the electronic loan applications were accessed by **Lewis** at her home.

37.     In total, based on the approximately seventeen fraudulent PPP and EIDL Program applications **Lewis** submitted and caused to be submitted, **Lewis** fraudulently obtained, and caused others to obtain, at least $1,196,588 in loan benefits.

## Use of Proceeds

38.     After obtaining the fraudulent loan benefits, **Lewis** used the funds for personal expenses, including subscription services, gambling, and contracting work on her home.

## Interstate Wire Communications

39.     Beginning in or around May 2020, and continuing through in or around at least May 2021, in the Western District of Louisiana and elsewhere, the defendant,

**SHAQUAILA LEWIS, a/k/a SHAQUAILA LEWIS-CHATMAN,**

having knowingly devised and intended to devise a scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, and attempting to do so, did knowingly transmit and cause to be transmitted, by means of wire communications in interstate commerce, writings, signals, pictures, and sounds for the purpose of executing such scheme and artifice.

40.    On or about the dates specified below, in the Western District of Louisiana and elsewhere, **Lewis**, for the purpose of executing and attempting to execute the scheme described in Paragraphs 18 through 38 of this Indictment, submitted and caused to be submitted by means of wire communication in interstate commerce the writings, signals, and pictures described below for each count, with each transmission constituting a separate count:

| Count | Approximate Date | Description of Wire |
|-------|------------------|---------------------|
| 1 | May 31, 2020 | Submission of the Perfect Memories Travel PPP Application from the Western District of Louisiana to Square Capital, located outside the State of Louisiana |
| 2 | February 14, 2021 | Submission of the Perfect Memories Travel Second Draw PPP Application from the Western District of Louisiana to Square Capital, located outside the State of Louisiana |
| 3 | August 18, 2020 | Submission of the Perfect Memories Travel EIDL Program Application from the Western District of Louisiana to the SBA, located outside the State of Louisiana |
| 4 | June 24, 2020 | Submission of the Person 1 PPP Application from the Western District of Louisiana to Kabbage, located outside the State of Louisiana |

Each of the above is a violation of Title 18, United States Code, Section 1343.

## COUNTS 5-9
### Money Laundering
### [18 U.S.C. § 1956(a)(1)(B)(i)]

1.      Counts 1 through 4 of this Indictment are re-alleged and incorporated herein by reference as though fully set forth herein.

2.      On or about the dates specified as to each count below, in the Western District of Louisiana and elsewhere, the defendant,

**SHAQUAILA LEWIS, a/k/a SHAQUAILA LEWIS-CHATMAN,**

did knowingly conduct and attempt to conduct a financial transaction affecting interstate and foreign commerce, which transaction involved the proceeds of specified unlawful activity, knowing that the property involved in the financial transaction represented the proceeds of some form of unlawful activity, and knowing that the transaction was designed in whole and in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of specified unlawful activity:

| Count | Approximate Date | Description |
|---|---|---|
| 5 | June 17, 2020 | Check written from account no. x7440, held by **Lewis** at Gibsland Bank & Trust, to **Lewis** in the approximate amount of $3,750, notated as "payroll" |
| 6 | July 1, 2020 | Check written from account no. x7440, held by **Lewis** at Gibsland Bank & Trust, to **Lewis** in the approximate amount of $3,750, notated as "payroll" |
| 7 | July 15, 2020 | Check written from account no. x7440, held by **Lewis** at Gibsland Bank & Trust, to **Lewis** in the approximate amount of $3,750, notated as "payroll" |
| 8 | July 29, 2020 | Check written from account no. x7440, held by **Lewis** at Gibsland Bank & Trust, to **Lewis** in the approximate amount of $3,750, notated as "payroll" |

11

| 9 | April 20, 2021 | Check written from account no. x7440, held by **Lewis** at Gibsland Bank & Trust, to **Lewis** in the approximate amount of $1,736.08, notated as "payroll" |
|---|---|---|

It is further alleged that the specified unlawful activity is wire fraud, in violation of Title 18, United States Code, Section 1343.

Each of the above is a violation of Title 18, United States Code, Section 1956(a)(1)(B)(i).

## NOTICE OF FORFEITURE

1.    Counts 1 through 9 of the Indictment are re-alleged and incorporated by reference as through fully set forth herein for the purposes of alleging forfeiture to the United States.

2.    Upon conviction of one or more of the offenses set forth in Counts One through Nine of this Indictment, the defendant shall forfeit to the United States, pursuant to Title 18, United States Code, Section 982(a)(2)(A), and/or Title 18, United States Code, Section 981(a)(1)(C), the latter made applicable by Title 28, United States Code, Section 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to any of the said offenses.

3.    Upon conviction of one or more of the offenses set forth in Counts Five through Nine of this Indictment, the defendant shall forfeit to the United States, pursuant to Title 18, United States Code, Section 982(a)(1), and/or Title 18, United States Code, Section 981(a)(1)(A), the latter made applicable by Title 28, United States Code, Section 2461(c), any property, real or personal, involved in such offense(s), or any property traceable to such property.

12

4.    If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

     a.    cannot be located upon the exercise of due diligence;

     b.    has been transferred or sold to, or deposited with, a third party;

     c.    has been placed beyond the jurisdiction of the Court;

     d.    has been substantially diminished in value; or

     e.    has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b), to seek forfeiture of any other property of the defendant up to the value of the forfeitable property described above.

A TRUE BILL:

**REDACTED**

GRAND JURY FOREPERSON

BRANDON B. BROWN
UNITED STATES ATTORNEY

SETH D. REEG
ASSISTANT UNITED STATES ATTORNEY

13

GLENN S. LEON
CHIEF
CRIMINAL DIVISION, FRAUD SECTION
UNITED STATES DEPARTMENT OF JUSTICE


JUSTIN M. WOODARD
ASSISTANT CHIEF
CRIMINAL DIVISION, FRAUD SECTION
UNITED STATES DEPARTMENT OF JUSTICE